UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN HAIK SIMONIAN,<br><br>                 Petitioner,<br><br>     v.<br><br>PAMELA BONDI, *et al.*,<br><br>                 Respondents. | Case No. 5:26-cv-03242-FLA (ACCV)<br><br>**ORDER DENYING VERIFIED PETITION FOR WRIT OF *HABEAS CORPUS* [DKT. 1]; AND EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER [DKT. 12]** |

**RULING**

For the reasons stated herein, Petitioner Karen Haik Simonian's ("Petitioner") Verified Petition for Writ of *Habeas Corpus* and Complaint for Injunctive Relief ("Petition," Dkt. 1) and Emergency Motion for Temporary Restraining Order ("Motion for TRO," Dkt. 12) are DENIED.

**BACKGROUND**

Petitioner is an alien[1] who was born in the Union of Soviet Socialist Republics ("USSR") on June 19, 1977, in what is now the Republic of Armenia ("Armenia"). Dkt. 1 ("Pet.") ¶ 13; Dkt. 1-4.[2] On or around February 10, 1996, Petitioner entered the United States as a non-immigrant visitor, with authorization to remain in the United States for a temporary period until August 9, 1996. Pet. ¶ 13; Dkt. 1-5. Petitioner remained in this country past that date without authorization, and has lived here for 30 years. Pet. ¶ 13; Dkt. 1-5. On April 17, 1997, Petitioner was placed in removal proceedings under 8 U.S.C. § 1229a.[3] Dkt. 1-5; Dkt. 6-1 (Pet'r's Form I-831 – Record of Deportable Alien, "Pet'r's Immigr. R.") at 4.

Between 1999 and 2021, Petitioner was arrested and convicted of multiple misdemeanor and felony offenses including: (1) hit and run: property damage in violation of Cal. Veh. Code § 20002(a); (2) disorderly conduct: prostitution in violation of Cal. Penal Code § 647(b); (3) racketeering (RICO); (4) racketeering conspiracy; and (5) and assault with a deadly weapon. Pet'r's Immigr. R. at 5. Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") in December 2014 (Dkt. 1-7 (Warrant for Arrest of Alien, served on Petitioner on

---

[1] "The term 'alien' means any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

[2] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

[3] All statutory references shall be to title 8 of the United States Code, unless otherwise specified.

February 12, 2014, while he was incarcerated at FCC Lompoc); Pet'r's Immigr. R. at 4), and detained in ICE custody until June 16, 2015, when an Immigration Judge ("IJ") ordered him to be released upon payment of a $25,000 bond (Dkt. 1-8).

On December 1, 2021, an IJ denied Petitioner's applications for asylum, withholding of removal, and adjustment of status, and ordered Petitioner removed to Armenia based on his commission of a criminal offense covered by 8 U.S.C. § 1127(a)(2). Pet'r's Immigr. R. at 4; *Simonian v. Bondi*, No. 24-2981 ("Pet'r's Appeal"), Dkt. 15 at 1 (9th Cir. Sept. 23, 2025) ("Petitioner's final order of removal was based on petitioner committing a criminal offense covered by 8 U.S.C. § 1252(a)(2)(C)," which includes criminal offenses that render an alien deportable under § 1127(a)(2)). On December 29, 2021, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"), which the BIA denied on April 15, 2024. Pet'r's Immigr. R. at 4; Pet'r's Appeal, Dkt. 15 at 1.

On May 9, 2024, Petitioner filed a Petition for Review of Agency Decision with the Ninth Circuit, seeking review the IJ's denial of asylum, withholding of removal, and protection under the Convention Against Torture. Pet'r's Appeal, Dkt. 2. On September 23, 2025, the Ninth Circuit issued its Order dismissing in part and denying in part the petition, finding the court lacked jurisdiction to review the denial of withholding of removal and that Petitioner did not present a colorable legal or constitutional claim the court could review. *Id.*, Dkt. 15. On November 17, 2025, the Ninth Circuit's order and judgment took effect upon the issuance of the formal mandate of the court, and Petitioner's order of removal became final. *Id.*, Dkt. 16 (filed in this action as Dkt. 1-9). Petitioner filed additional applications for relief between 2021 and 2026, all of which appear to have been denied, audited, or otherwise resolved. Pet'r's Immigr. R. at 3–4.

On May 26, 2026, ICE Office of Enforcement and Removal Operations ("ERO") officers arrested Petitioner and placed him in ICE custody. Pet. ¶¶ 21, 23; Dkt. 6-1 ("Gomez Decl.") ¶ 6. Respondents submit signed copies of the Warrant for

Arrest of Alien, dated May 25, 2026, and Warrant of Removal/Deportation, dated May 26, 2026.  Dkt. 6-3 at 2–4.

On June 11, 2026, Petitioner filed the subject Petition (Dkt. 1) and supporting memorandum (Dkt. 1-1, "Pet. Mem"), challenging his detention as a violation of the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and applicable regulations.  The Petition presents seven claims for *habeas* relief for: (1) violation of Fifth Amendment Right to Procedural Due Process; (2) violation of Fifth Amendment Right to Substantive Due Process; (3) violation of Fourth Amendment Right against Unreasonable Seizure; (4) violation of the APA, 5 U.S.C. § 706(2)(A), for detaining Petitioner without a reasonable suspicion he was an alien present in the United States illegally, in violation of 8 C.F.R. § 287.8(b)(2); (5) violation of the APA, 5 U.S.C. § 706(2)(A), for conducting a warrantless arrest without probable cause of an immigration violation, in violation of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(i); (6) violation of the APA, 5 U.S.C. § 706(2)(A), for conducting a warrantless arrest without probable cause that Petitioner was likely to escape before a warrant could be obtained for his arrest; and (7) violation of the APA, 5 U.S.C. § 706(2)(A), for violation of the *Castañon Nava* settlement agreement by conducting a warrantless arrest without considering the required factors.  Pet. ¶¶ 52–86.

On June 11, 2026, the court issued notice of General Order No. 26-05, and set a briefing schedule on the Petition.  Dkt. 4.  Respondents filed their Response to the Petition on June 18, 2026.  Dkt. 6 ("Resp.").

On June 24, 2026, Petitioner filed a Motion for Temporary Restraining Order ("First Motion"), requesting the court order Respondents to: "(1) immediately release him from custody until Respondents comply with the notice and informal interview process and present evidence that his removal is reasonably foreseeable, (2) *enjoin Respondents from transferring him outside the Central District of California jurisdiction until petition is resolved,* (3) ordering Respondents to show cause why

preliminary injunction should not issue, (4) enjoin Respondents from removing him to a third country without notice and meaningful opportunity to raise a fear-based claim, and (5) allow for orderly departure." Dkt. 8 ("1st Mot.") at 7 (italics and errors in original).

On June 25, 2026, this court denied the First Motion for failure to comply with the procedural requirements of General Order No. 26-05, or to establish imminent, irreparable harm that could not be addressed through the Petition. Dkt. 9.

On July 15, 2026, Petitioner filed the subject Emergency Motion for Temporary Restraining Order ("Second Motion"), requesting the same relief as in the First Motion. Dkt. 12 ("2d Mot."). Petitioner argues emergency relief is needed because Petitioner received a Notice of Transfer on July 15, 2026, indicating he would be transferred out of the Central District of California on July 18, 2026, and removed from the country by charter flight on July 26, 2026. *Id.* at 2.[4] Respondents oppose the Second Motion. Dkt. 15 ("Opp'n to 2d Mot.").

## DISCUSSION

**I.    Petitioner's Request for an Injunction Prohibiting Petitioner's Transfer from This District and Removal from the United States**

**A.    Legal Standard for Injunctive Relief**

"An injunction is a matter of equitable discretion" and "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 32 (2008). "[T]he usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v.*

---

[4] The memorandum in support of the Second Motion is identical to the memorandum in support of the First Motion. *Compare* 2d Mot. at 3–28 *with* 1st Mot. at 3–28. These memoranda are also substantially identical to the memorandum in support of the Petition—with the only difference being the addition of four paragraphs in the latter-filed briefs regarding Petitioner's health and family. *Compare* 2d Mot. at 3–28 *with* Pet. Mem. at 2–26.

*Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963).  "The status quo is the last uncontested status which preceded the pending controversy." *Id.* at 809 (citation and quotation marks omitted).

A petitioner seeking a preliminary injunction or temporary restraining order "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the [petitioner] can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).  A "serious question" is "one as to which the moving party has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984) (quotation marks and citation omitted).

The Ninth Circuit follows a "sliding scale" approach to the four preliminary injunction elements, such that "a stronger showing of one element may offset a weaker showing of another, as long as [movants] establish that irreparable harm is likely." *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (cleaned up).  The first factor, "likelihood of success on the merits[,] is the most important factor—and even more so when a constitutional injury is alleged." *Matsumoto v. Labrador*, 122 F.4th 787, 804 (9th Cir. 2024).  "If a movant makes a sufficient demonstration on all four *Winter* factors …, a court must not shrink from its obligation to enforce his constitutional rights, regardless of the constitutional right at issue." *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023) (cleaned up).

**B.  Analysis**

Petitioner does not present any specific argument or legal authority for why the court should enjoin his transfer from the district and removal from the United States. *See* Pet. Mem.; 2d Mot.  Instead, Petitioner argues he is entitled to immediate release

6

under the Petition, and that he and his family will suffer irreparable harm if he is removed because of his health and because his removal will result in extreme hardship to his daughter, mother, and grandmother.  Pet. Mem. at 9–10, 23–24; 2d Mot. at 10–11, 25–26.  Petitioner additionally argues he suffers from health conditions which require continued care, and that he would be at risk for irreversible consequences if deprived of his current medical care or removed by airplane.  Pet. Mem. at 23–24; 2d Mot. at 25–26.  Respondents counter that "there is no jurisdiction for a claim delaying the enforcement of a final removal order in District Court pursuant to 8 U.S.C. § 1252(g)[.]"  Opp'n to 2d Mot. at 2.

It is undisputed Petitioner is subject to a final order of removal.  Pet. ¶ 16; Dkt. 1-9.  Section 1252(g) states:

> Except as provided in this section and <u>notwithstanding any other provision of law</u> (statutory or nonstatutory), <u>including section 2241 of Title 28</u>, or any other habeas corpus provision, … <u>no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision</u> or action by the Attorney General <u>to</u> commence proceedings, adjudicate cases, or <u>execute removal orders against any alien</u> under this chapter.

8 U.S.C. § 1252(g) (emphasis added); *see also Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) (recognizing "Congress has explicitly precluded" federal courts' review of *habeas* claims seeking to enjoin the execution of a removal order).

Petitioner does not cite any legal authority to establish this court has jurisdiction to enjoin the execution of his removal to Armenia pursuant to the final removal order. *See* 2d Mot.; Dkt. 16.  Although Petitioner argues on reply that Respondents have not provided the court with a copy of travel documents issued by Armenia, Petitioner did not present any specific arguments challenging his removability in his moving papers. *See* 2d Mot.  The court will not consider arguments newly raised on reply, as Respondents have not had a reasonable opportunity to respond.

Accordingly, the court DENIES the Second Motion and Petitioner's request for an injunction barring his transfer from the district or removal from the United States,

for lack of jurisdiction to enjoin the execution of his final removal order to Armenia. *See* 8 U.S.C. § 1252(g).  For the sake of completeness, the court will address Petitioner's remaining arguments and claims on their merits.

## II.  Petitioner's Request to Be Immediately Released

### A.  Legal Standard for *Habeas* Relief

A writ of *habeas corpus* may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(a), (c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *Rasul v. Bush*, 542 U.S. 466, 474 (2004).  The petitioner "bears the burden of demonstrating that he is in custody in violation of the Constitution or laws or treaties of the United States."  *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1159 (S.D. Cal. Oct. 1, 2025) (cleaned up).

### B.  Third through Seventh Claims for *Habeas* Relief

In the third through seventh claims, Petitioner alleges Respondents violated the Fourth Amendment and APA by arresting and detaining him without reasonable suspicion or a warrant.  Pet. ¶¶ 66–86.  Petitioner does not present any argument or legal authority in support of these claims in his memoranda in support of the Petition and Second Motion.  *See* Pet. Mem.; 2d Mot.

Respondents state Petitioner was arrested pursuant to a Warrant of Removal/Deportation ("Warrant for Removal," Dkt. 6-3 at 2–3) and Warrant for Arrest of Alien ("Warrant for Arrest," Dkt. 6-3 at 4), and present copies of the warrants for the court's review.  Resp. at 6.  In his reply to the Petition, Petitioner acknowledges Respondents' submission of these warrants, but argues "none of these exhibits constitute a Notice of Revocation of Petitioner's well over 10 years of

Release." Dkt. 7 at 6.

As Petitioner does not present any argument or evidence to refute Respondents' evidence he was arrested and detained pursuant to warrants, the court DENIES Petitioner's third through seventh claims for failure to establish entitlement to *habeas* relief on these bases.

### C.    First Claim for Violation of Procedural Due Process

#### 1.    Procedural Due Process under the Fifth Amendment

The Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.  Although "[the] Fifth Amendment's protections do not extend to aliens outside the territorial boundaries [of the United States,] … once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 29, 306 (1993).

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (cleaned up).  Courts weigh three factors to determine what procedural protections the Constitution requires in a particular case: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 334–35.

#### 2.    Detention and Removal of Aliens under the INA

Section 1231(a) governs the detention, release, and removal of aliens ordered removed and states in relevant part:

**(1) Removal period**

**(A) In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

**(B) Beginning of period**

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**(C) Suspension of period**

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

**(2) Detention**

**(A) In general**

During the removal period, the Attorney General shall detain the alien.  Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under [§ 1182(a)(2) or (a)(3)(B)] or deportable under [§ 1227(a)(2) or (a)(4)(B)].  …

**(3) Supervision after 90-day period**

If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.  …

**(6) Inadmissible or criminal aliens**

An alien ordered removed who is inadmissible under [§ 1182], removable under [§ 1227(a)(1)(C), (a)(2), or (a)(4)] or who has

10

been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(1), (2)(A), (3), (6).

"Once the removal period defined in [§ 1231(a)(1)] begins, an alien in the United States will be taken into custody pursuant to the warrant of removal." 8 C.F.R. § 241.3(a). "Any officer authorized by 8 C.F.R. § 287.5(e)(3) to execute administrative warrants of arrest may execute a warrant of removal." *Id.* § 241.2(b). "Any bond previously posted will be canceled unless it has been breached or is subject to being breached." *Id.* § 241.3(b).

8 C.F.R. § 241.4 ("§ 241.4") governs the "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period." *Id.* § 241.4(a).[5]

The district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner may release an alien if the alien demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal from the United States. The district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner may also, in accordance with the procedures and consideration of the factors set forth in this section, continue in custody any alien described in paragraphs (a) and (b)(1) of this section.

*Id.* § 241.4(d)(1).

///

///

---

[5] "All references to the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, and the district director in this section shall be deemed to include any person or persons (including a committee) designated in writing by the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, or the district director to exercise powers under this section." 8 C.F.R. § 241.4(c)(4).

Once an alien is released under § 241(d)(1), the revocation of such release is governed by § 241.4(*l*), which provides in relevant part:

> (1) Violation of conditions of release.  Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody.  …  Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole.  The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

> (2) Determination by the Service.  The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section.  A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner.  Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

>> (i) The purposes of release have been served;

>> (ii) The alien violates any condition of release;

>> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

>> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(1), (2).[6]

### 3.    Analysis

Petitioner contends Respondents violated his procedural due process rights because "ICE failed to give Petitioner proper notice prior to revoking his release noncompliant with 8 C.F.R. §241.4 (l)(2)."  Pet. Mem. at 11; 2d Mot. at 13 (errors in

---

[6] "Service means the U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, and/or U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears."  8 C.F.R. § 1.2.

original).  Petitioner further argues, "[m]ore importantly and equally relevant question is whether the release was revoked by an official delegated under 8 C.F.R. §241.4 (a)."  Pet. Mem. at 12; 2d Mot. at 14 (errors in original).

Prior to his recent arrest on May 26, 2026, Petitioner was released on bond during the pendency of his removal proceedings and related appeals, pursuant to the IJ's Order dated June 16, 2015.  Pet. ¶ 15; Dkt. 1-8.  This bond was canceled automatically upon the execution of the Warrant of Arrest and Petitioner's automatic detention pursuant to the Warrant of Removal.  *See* 8 C.F.R. § 241.3(a)–(b).  The Warrant for Arrest was issued and signed by Supervisory Detention and Deportation Officer Ivan Robles, pursuant to his authority under 8 C.F.R. § 287.5(e)(2)(xxxii). *See* Dkt. 6-3 at 4.  The procedural requirements of § 241.4(*l*) are inapplicable here, as Petitioner was never released pursuant to § 241.4(d)(1) in the first instance.[7]

Petitioner does not present any argument, evidence, or legal authority to establish his arrest pursuant to the Warrant of Arrest and Warrant of Removal were invalid, or that he was entitled to remain free on bond pursuant to the IJ's June 16, 2015 Order after his order of removal became final on November 17, 2025.

Accordingly, the court DENIES Petitioner's first claim for failure to demonstrate Respondents violated his procedural due process rights.

### D.    Second Claim for Violation of Substantive Due Process

In *Zadvydas*, 533 U.S. at 701, the Supreme Court held that the government may detain a removable alien reasonably and constitutionally for up to six months after the

---

[7] Petitioner cites cases, including *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025), to argue ICE is required to comply with the procedural requirements of § 241.4(*l*) prior to revoking an order of supervision and detaining an alien subject to a final order of removal.  Pet. Mem. at 11–16; 2d Mot. at 13–18.  The cited cases all involved aliens subject to final orders of removal who were subsequently released on orders of supervision pursuant to § 241.4(d), and do not stand for the proposition that ICE must comply with the requirements of § 241.4(*l*) prior to executing warrants for removal and arrest under 8 C.F.R. §§ 241.2 and 241.3. These cases are inapposite here.

order of removal becomes final, while working to effectuate his or her removal. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The alien must be released if a court determines "there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Petitioner contends his detention violates his substantive due process rights because, "[w]hen Respondents arrested and detained Petitioner, he was not a dangerous person, nor was he a flight risk and his final removal order was entered 22 years ago, making the post removal order 90-day period long passed." Pet. ¶ 58 (errors in original). According to Petitioner, because his prior detention in 2014–2015 did not result in his removal, it is not reasonably likely that Respondents will be able to remove him to Armenia now. Pet. Mem. at 16–18; 2d Mot. 18–20.

It is unclear why Petitioner believes his final removal order was entered 22 years ago, considering Petitioner admits his removal order did not become final until the Ninth Circuit issued its order on September 23, 2025, at the earliest. *See* Pet. ¶ 16 ("Petitioner has a final removal order since September of 2026.") (citing Dkt. 1-9). Petitioner was arrested and detained by ICE ERO on May 26, 2026, and has been detained for approximately 2 months as of the date of this Order. Pet. ¶¶ 21, 23; Gomez Decl. ¶ 6. As less than six months have passed since Petitioner was arrested after the order of removal became final, his detention is presumed reasonable and constitutional. *See Zadvydas*, 533 U.S. at 701.

Furthermore, Petitioner's request for emergency relief is predicated on his assertion that Respondents intended to remove him from the United States to Armenia on July 26, 2026. 2d Mot. at 2. Petitioner cannot credibly request the court consider the Petition on an expedited basis because of his imminent removal, while also arguing there is no significant likelihood of removal to Armenia in the reasonably foreseeable future, as required for his continued detention to be unreasonable and

unconstitutional.  *See Zadvydas*, 533 U.S. at 701.

The court, therefore, DENIES Petitioner's second claim for failure to establish a substantive due process violation.

### CONCLUSION

For the reasons stated, Petitioner's Petition for Writ of *Habeas* Corpus (Dkt. 1) and Second Emergency Motion for Temporary Restraining Order (Dkt. 12) are DENIED.  Respondents are ORDERED to release the $25,000 bond payment Petitioner posted pursuant to the IJ's June 16, 2015 Order within seven (7) days of the docketing of this Order, if it has not been released already.  *See* 8 C.F.R. § 241.3(b).

IT IS SO ORDERED.

Dated: July 30, 2026

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge